IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARMANDO J. GARCIA

       Plaintiff,                 No. CIV S-03-2012 FCD CMK P

   vs.

T. ROSARIO, et al.,

       Defendants.            FINDINGS & RECOMMENDATIONS

_____/

       Plaintiff is a state prisoner, without counsel, prosecuting this civil rights action against defendant S.B. Curry and against defendant J.C. Hartl. The case is before the undersigned pursuant to Local Rule 302(c) for findings and recommendations on defendants' motion for summary judgment. Fed. R. Civ. P 56(c).

**I.    Standard of Review**

       On a motion for summary judgment pursuant to Rule 56(c), the court must accept the evidence of the non-moving party as true and draw all reasonable inferences of fact in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of demonstrating that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P 56(c)). If the moving party

1

meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact does actually exist.  See Matsushita Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The party opposing summary judgment may not rest on conclusory allegations, but must set forth specific facts showing that there is a genuine issue of material fact.  See Mosher v. Saalfeld, 589 F.2d 438, 422 (9th Cir. 1978)(involving a pro se litigant); see also Anderson, 477 U.S. at 586 n. 11.  When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact for trial.  See Matsushita, 475 U.S. at 587.

On March 18, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

**I.     Background**

Plaintiff is an inmate in the California state prison system, and, at all times relevant to this complaint, was housed at California State Prison, Sacramento (CSP-Sac).  Due to events which occurred in August and September 2002, all Level IV inmates housed at Facility B at CSP-Sac were put on lock down.  On October 1, 2002, the lock down began to be lifted. Among other things, Hispanic inmates were escorted without handcuffs, groups of up to five inmates were escorted by two correctional officers and Yard was normal for all prisoners, except Hispanics who were to have Yard in the concrete mini-yards on B-Facility. During the lock down, personal property, including packages from outside prison, were not distributed to inmates who were on lock down.

Plaintiff alleges that, on October 3, 2002, he was escorted by defendant correctional officers Curry and Hartl to the B-Facility property room to pick up personal property. Along with plaintiff, defendants Curry and Hartl were escorting four other inmates. Defendants Curry and Hartl received confirmation to escort the prisoners to the property room.  The property room was across the yard from plaintiff's unit.  Upon arriving at the property room, defendants

Curry and Hartl were told to go to the back of the line. After conferring with the Sergeant in the watch tower, defendant Hartl decided to escort the prisoners back to their unit instead of waiting at the property room. Defendants Curry and Hartl received confirmation from the central tower, and began escorting plaintiff and the four other inmates across the yard and back to 6-block, which was the inmates' unit.

While escorting the inmates across the yard, defendant Hartl noticed that the inmates he was escorting started to run forward. Defendant Hartl observed inmates approaching the escorted inmates from both sides. There were also inmates running past defendant Hartl from behind. One of those inmates reached over defendant Hartl's shoulder with a weapon, struck him with his elbow, and spun defendant Hartl around. Defendant Curry ordered the inmates approaching the escorted inmates to stop. Defendant Curry noticed one of the approaching inmates had a large stabbing weapon. The inmates under escort were running toward the approaching inmates. Defendant Curry grabbed defendant Hartl's arm and said something about getting out of the way.

The officers in the central tower were announcing "down in the yard" over the public address system, and shots were fired from the central tower and at least one control booth. Defendants Curry and Hartl did not use their personal alarms because personal alarms can only be used inside prison buildings, and defendants Curry and Hartl were outside in the yard during the incident.

While the shots were being fired from the central tower and control booth, defendant Hartl stood out of the way. He then took out his pepper spray and joined another officer who was trying to gain control of two inmates. On his way to join the other officer, defendant Hartl pepper-sprayed two inmates, who were on the ground stabbing each other. During the assault, everything happened very quickly.

Plaintiff was stabbed and received multiple injuries during this altercation. He states that defendants Curry and Hartl ran away, allowing plaintiff to be assaulted by other

1  inmates. In his opposition to defendants' motion to summary judgement, plaintiff states that
2  defendants "left the inmates and did nothing to prevent [the assault] until it was over... [when]
3  they ...placed restraints on all inmates involved." (Resp. to Def.'s Mot. Summ. J., 2:18-21.) He
4  alleges that defendants Curry and Hartl failed to protect him from assault in violation of the
5  Eighth and Fourteenth Amendments.  Plaintiff also appears to state a pendant state-law claim, an
6  equal protection claim and a Fifth Amendment claim.

**III.    Discussion**

Defendants contend that they are entitled to summary judgment because plaintiff cannot establish that defendants Hartl and Curry violated his Eighth and Fourteenth Amendment rights.  Prison officials have a duty to take reasonable steps to ensure the safety of prison inmates. See Farmer v. Brennan, 511 U.S. 825, 833 (1984).  A prisoner may establish a claim under the Eighth and Fourteenth Amendments against prison officials when the officials acted with "deliberate indifference" to the threat of serious harm or injury by another prisoner.  See Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982).  To show deliberate indifference, a plaintiff must show that prison officials knew of and disregarded an excessive risk to inmate safety.  See Farmer, 511 U.S. at 837.  In the context of prison officials responding to an outbreak of violence, the "deliberate indifference" standard does not require that the guard believed to a moral certainty that one inmate intended to attack another before that officer is obligated to take steps to prevent that assault.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). However, the guard must have "more than a mere suspicion that an attack will occur."  Id.

The court is mindful of the difficulties in evaluating prison decisions.  See id. Protecting the safety of prison inmates and staff requires difficult decisions and offers no easy solutions.  See Bell v. Wolfish, 441 U.S. 520, 547 (1979).  In situations where prison guards respond to an outbreak of violence, the deliberate indifference standard "does not adequately capture the importance of competing obligations or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury

4

of a second chance."  Whitley v. Albers, 475 U.S. 312, 320 (1986).

Prison officials may avoid liability in suits claiming that they failed to ensure the safety of prison inmates by presenting evidence that they lacked knowledge of the risk to the prisoner's safety.  See Gibson v. County of Washoe, 290 F.3d 1175, 1187-88.  Moreover, prison officials may avoid liability by presenting evidence of a reasonable, albeit unsuccessful, response to the risk.  See id. at 844-45.

Turning to plaintiff's allegations, the court considers whether plaintiff has come forward with any facts showing that defendants would have any reason to believe that he would be attacked by other prisoners.  In his complaint, plaintiff states that memos were circulating in the prison stating that White and Mexican inmates were not to come into contact with each other due to violence which occurred on August 22, 2002 and other incidents of ongoing tension. (Compl. Section IV, ¶ 1.)  In his opposition to defendants' motion for summary judgment, plaintiff states that the "Mexicans were locked down thus the necessity to be escorted." (Opp'n to def.'s Mot. Summ. J. at 2:2-3.)   Plaintiff has not shown that defendants were aware of any specific threat of violence between Whites and Hispanics on October 3, 2002.  Plaintiff fails to show that defendants knew of any specific danger to plaintiff.  Defendants' evidence shows that defendants were following proper procedures given that the lock down on Facility B Hispanic inmates had begun to be lifted.  Viewing the evidence in a light most favorable to plaintiff, the court cannot find that he has established a genuine issue of material fact as the liability of defendants. See Mosher, 589 F.2d at 442.

Even assuming arguendo that plaintiff had established that defendants had knowledge of a risk to plaintiff's safety, defendants have presented evidence that they acted reasonably, albeit unsuccessfully, to respond to the danger to plaintiff.  Defendants have established that they choose to return plaintiff and the other inmates being escorted back to their cells instead of allowing the inmates to wait in line at the property room and possibly come into contact with other prisoners.  Upon deciding to move plaintiff back to his cell, defendants notified

1 the central tower.  Defendant officer Curry ordered the inmates who were approaching plaintiff
2 and the other escorted inmates to stop.  Once the assault began, defendants stood back to allow
3 guards from the central tower and at least one control tower to fire shots into the yard. Once other
4 staff responded to the assault, defendant Hartl attempted to gain control of the situation by
5 spraying inmates with his pepper spray. Defendants restrained the inmates, ultimately handcuffed
6 the fighting inmates, and removed them from the yard.   Defendants have presented evidence that
7 correctional officers are trained not to run into a prison melee until there is adequate staff to
8 control the situation.  Officers are also required to stand back during an altercation to allow gun
9 towers a clear line to shoot tear gas, scat rounds, baton rounds, or even live ammunition if
10 warranted.  Plaintiff has provided no evidence which establishes that defendants did not act
11 reasonably to respond to the danger to plaintiff.  See  Mosher, 589 F.2d at 442.

12          The court finds that defendants are entitled to summary judgment on plaintiff's
13 claim that defendants violated his Eighth and Fourteenth Amendment rights.

14          Defendants contend that plaintiff's pendant state-law claim[1] against them must be
15 dismissed because plaintiff did not follow California's procedures for pursuing tort claims against
16 public employees.  Before bringing a suit for damages against a public entity in California, a
17 plaintiff must present the claim to the appropriate public entity, which must have resolved it.  See
18 Cal. Gov. Code §§ 911.2, 915, 954.4. Failure to comply with these requirements bars pendant
19 state-law claims in civil rights actions.  See Karim-Panihi v Los Angeles Police Dep't, 839 F.2d
20 621, 627 (9th Cir. 1988).  Defendants have demonstrated that plaintiff has not submitted a claim
21 regarding the October 3, 2002 incident. (Doc. 54-1.)  Plaintiff makes no showing that he filed a
22 claim with the appropriate entity.  Plaintiff's state-law claims against defendants should be
23 dismissed.

---

25 [1] It is not clear from the language of plaintiff's complaint whether he is alleging a pendant
state-law claim against defendants.  However, the language of plaintiff's complaint indicates that
26 he may be bringing such a claim. (Compl. Section IV, ¶¶ 7&8.)

Defendants contend that plaintiff fails to allege an equal protection claim against defendants. Plaintiff makes no attempt to link the October 3, 2002 assault with any equal protection claim, apart from conclusory allegations. To plead an equal protection violation, plaintiff must allege he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). Plaintiff has failed to link his factual allegations to his legal claims. See McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th Cir. 1996). Plaintiff's equal protection claim against defendants should be dismissed.

Defendants argue that plaintiff has failed to allege a Fifth Amendment claim against defendants. The due process rights of the Fifth Amendment were made applicable to the states through the Fourteenth Amendment. Thus it is generally understood that the due process clause of the Fifth Amendment applies to the actions of the federal government. See Dusenbery v. United States, 534 U.S. 161, 122 S.Ct. 649 (2002) . In any event, the rights set forth in the Fifth Amendment substantially duplicate those set forth in the Fourteenth Amendment. Accordingly, for the reasons discussed above, the court finds that defendants are entitled to summary judgment on plaintiff's claim that his Fifth Amendment rights were violated.

**IV.   Conclusion**

Based on the foregoing, IT IS RECOMMENDED that:

1. Defendants' motion for summary judgment be granted in its entirety; and

2. Plaintiff's action be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's

///

///

1 Findings and Recommendations." Plaintiff is advised that failure to file objections within the
2 specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951
3 F.2d 1153 (9th Cir. 1991).

5 DATED: May 10, 2006.

```
                                              _____
                                              CRAIG M. KELLISON
                                              UNITED STATES MAGISTRATE JUDGE
```